IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ERICA MARIE ERICKSON,**

Plaintiff,

v.

**DOMINGO EMMANUELLI, et al.,**

Defendants.

Civil No. 24-1389 (CVR) (MBA)

**REPORT AND RECOMMENDATION**

Erica Marie Erickson ("Erickson") brought this civil action against codefendants Lourdes L. Gómez-Torres ("Gómez-Torres"), Secretary of Justice, and Joseph González ("González"), Commissioner of the Puerto Rico Police Bureau,[1] in their official capacities; Doug Emmanuelli-Hernández ("Emmanuelli-Hernández"), former Secretary of Justice; Antonio López Figueroa ("López-Figueroa"), former Commissioner of the Puerto Rico Police Bureau; Andrés Fernández Vera ("Fernández-Vera"), Assistant District Attorney of the Judicial District of Mayagüez; José Figueroa Andújar ("Figueroa-Andújar"), Captain of the Puerto Rico Police Department; José Rafael Ramos Quiñones ("Ramos-Quiñones"), Agent of the Puerto Rico Police Department; and David Cabán Méndez ("Cabán-Méndez"), Sergeant of the Puerto Rico Police Department, in their personal capacities (collectively, "Commonwealth codefendants"); veterinarians Marilyn Arce and Adriana Luna; Solymar Crespo; Maria González; and Liberman Media Group, LLC, under 42 U.S.C. §§ 1983 and 1988 alleging deprivation of her constitutional rights to privacy, liberty, and property. (ECF No. 1). She also alleged defamation and general tort claims pursuant to Section 8 of Article II of the Constitution of the Commonwealth of Puerto Rico, P.R. CONST. art. II, § 8, the Libel and Slander Act

---

[1] In the Complaint, Erickson does not list Gómez-Torres or González, as they appear to have replaced Emanuelli-Hernández and López-Figueroa in their respective positions, in the intervening time between the filing of the Complaint and the instant Report and Recommendation. The Motion to Dismiss at ECF No. 57, names Janet Parra-Mercado, instead of Lourdes Gómez-Torres, however ECF No. 101 substitutes in Gómez-Torres as she took over the role of Secretary of Justice on May 27, 2025. (ECF No. 101 at 1, n.1).

1

of 1902, P.R. LAWS ANN. tit. 32, §§ 3141-49, and Puerto Rico's General Tort Statute, P.R. LAWS ANN. tit. 31, § 10805. (*Id.*).

The Commonwealth codefendants moved to dismiss the action under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 57). Erickson opposed (ECF No. 66), the Commonwealth codefendants replied (ECF No. 80), and Erickson filed a sur-reply (ECF No. 87). U.S. District Judge Camille Vélez-Rivé referred the motion to dismiss to me for a report and recommendation. (ECF No. 86). For the reasons set forth below, I recommend the motion to dismiss be **GRANTED** in part and **DENIED** in part.

## BACKGROUND[2]

In 2021, Erickson began operating a non-profit animal rescue, Playa Animal Welfare Services, Inc. ("Playa PAWS"), out of her home in Añasco. (ECF No. 1 ¶¶ 7, 21). Erickson quickly became involved in a dispute with a neighbor over concerns about how Erickson's yard looked, the amount of trash she generated, the odor from the trash, and the cats that were allowed to wander freely. (*Id.* ¶¶ 25-27). As a result of a neighbor's complaint, there was a local court proceeding on November 10, 2022, which also involved the Mayagüez Health Department and where a judge ultimately dismissed the case against Erickson. (*Id.* ¶¶ 23-27, 29-30). As the conflict continued, other neighbors became involved and so did a local Puerto Rican television station, TeleOnce, which eventually put out a damaging "investigatory report" about Erickson and Playa PAWS on August 22, 2023. (*Id.* ¶¶ 32, 34-37).

Following this report, on August 25, 2023, one of Erickson's neighbors, codefendant María González, filed another complaint, this time at the Añasco Police station, making a report of Erickson's supposed wrongdoing to the police captain, Figueroa-Andújar. (ECF No. 1 ¶ 67). Figueroa-Andújar then sent Ramos-Quiñones, an agent, to the prosecutor's office in Mayagüez where Ramos-Quiñones swore under oath in front a judge that a thorough investigation had taken place and multiple people had been interviewed about this issue. (*Id.* ¶ 69). However, no such investigation had taken place. (*Id.*). Cabán-Méndez, a sergeant and Ramos-Quiñones's supervisor, signed off on the warrant

---

[2] For purposes of the Commonwealth codefendants' Motion to Dismiss, the well-pleaded facts are taken from Erickson's Complaint, ECF No. 1, and are presumed to be true.

as well, swearing under oath that he too had verified the information and that there was sufficient probable cause to search Erickson's home and rescue. (*Id.* ¶ 70). But again, he had not done so. (*Id.*). Prosecutor Fernández-Vera did the same. (*Id.* ¶ 71). The warrant was to look for "forged veterinary records, forged health travel certificates for cats, cats in poor condition and used for breeding." (*Id.*). The warrant was not signed by a judge. (*Id.* ¶ 76).

Early in the morning on September 1, 2023, fifteen armed police officers, accompanied by two veterinarians and a concerned citizen who ran a nearby horse rescue, all three of whom are codefendants, stormed into Erickson's house to execute the search warrant. (ECF No. 1 ¶ 72). The police failed to knock or announce themselves before entering Erickson's property and home. (*Id.* ¶ 76). Ramos-Quiñones gave Erickson a warrant in Spanish and a purported "identical copy" English translation, but the English version was 7 pages shorter than the Spanish version (*Id.* ¶ 74). On the first page of the warrant, it stated that the search "must be executed during daylight hours unless a magistrate found compelling reasons to execute the warrant in the dark." (*Id.* ¶ 76). At the time of the entry of the police, about 5:30am, it was still dark outside. (*Id.* ¶¶ 72, 76).

Participants in the search, including the police and veterinarians, did not look at Erickson's nonprofit paperwork nor did they verify with any of the veterinarians Erickson used that the cats in the rescue were receiving proper care. (ECF No. 1 ¶ 79). Erickson called an interpreter, as she was unable to understand most of what was being said by the Spanish-speaking police, but the interpreter was denied entry to her property. (*Id.* ¶ 80). Erickson insisted she was entitled to a translator but was told by Ramos-Quiñones "this is Puerto Rico, and we speak Spanish here." (*Id.*).

Codefendant Dr. Luna Arce, a veterinarian, made the decision to confiscate all of Erickson's cats and directed the police to take every cat on the property. (ECF No. 1 ¶ 81). When Erickson protested to Ramos-Quiñones that the warrant covered only cats in poor health and those used for breeding, he brushed her off and said it was up to the veterinarian. (*Id.* ¶ 82). The police had not brought along any supplies to transport the cats and therefore took all of Erickson's, including cages, food, medications, and more. (*Id.* ¶ 83). The police then transported every cat they could catch in the back of a horse trailer to the property of Solymar Crespo, a codefendant in this case. (*Id.* ¶¶ 88-89).

The police left Erickson's property's gate open throughout the day, which allowed her blind

3

cat, Dulce, to escape. (ECF No. 1 ¶ 85). Dulce was run over by the police as they pulled away with the horse trailer. (*Id.*). The police also continued to search and ransack Erickson's property throughout the day. (*Id.* ¶ 86). Figueroa-Andújar and others went through Erickson's personal effects, breaking drawers, destroying electronics, and stealing everything of value they could find in the process. (*Id.*). One of the agents "covertly slipped a handful of items into his pocket." (*Id.* ¶ 87). "None of these items appear on the police inventory." (*Id.*).

After the police had carted off all the cats they could catch, Ramos-Quiñones told Erickson that she needed to go with him to the police station. (ECF No. 1 ¶ 91). Erickson was told she was not under arrest, but if she did not come with them in the police car she would be placed under arrest. (*Id.*). Erickson called her lawyer, Marcos Soto, who attempted to arrange alternate transport, but Ramos-Quiñones refused this offer. (*Id.*). Erickson was walked out of her property in front of the media and had cameras shoved in her face as Ramos-Quiñones placed her in the back of his squad car as if she were under arrest. (*Id.*). Erickson's lawyer met her at the police station, and they were sat in a room where they waited for several hours without being spoken to or interrogated until the police finally allowed Erickson to leave. (*Id.* ¶ 92).

Figueroa-Andújar was interviewed by TeleOnce on a news story on the evening of September 1, 2023. (ECF No. 1 ¶ 95). Figueroa-Andújar stated that Erickson's cats were kept in "deplorable conditions," that Ramos-Quiñones had brought Erickson to the police station, and that the police were consulting with prosecutor Fernández-Vera on potential criminal charges. (*Id.*).

Erickson filed a lawsuit against the police for the return of her cats and property that were illegally seized on September 1. (ECF No. 1 ¶ 104). But because the police had not followed the legal procedure of filing a confiscation order within 120 days of taking the cats, the state court dismissed the case on May 31, 2024, saying the cats had simply been taken by the police but had not been "seized" and therefore Erickson could not challenge the seizure. (*Id.* ¶¶ 104, 106).

On June 7, 2024, prosecutor Fernández-Vera filed 120 counts of animal abuse and animal cruelty against Erickson, including 57 felonies. (ECF No. 1 ¶ 107). At the Rule 6 probable cause hearing, Ramos-Quiñones testified that other than taking González's complaint, no investigation had been done before requesting the warrant. (*Id.* ¶ 109). The only evidence he was able to cite to regarding

4

forged vet records and health certificates was a Facebook screenshot from an unknown source he had been shown. (*Id.*). At the end of the hearing, after other witnesses had testified as well, the judge stated that there was no proof to sustain the 120 charges filed. (*Id.* ¶ 110). Fernández-Vera then "declared to the judge that in Puerto Rico it is illegal to even possess a sick animal" so Erickson needed to be arrested. (*Id.*). The judge agreed and instituted all 120 charges against Erickson. (*Id.*). Erickson was handcuffed, shackled, and led to jail. (*Id.*). She was released after posting a nonrefundable bond of approximately $2,700. (*Id.*). At the preliminary hearing on August 12, 2024, Ramos-Quiñones contradicted his June 7 testimony at the Rule 6 hearing and said that he had thoroughly investigated, including interviewing neighbors, before requesting a search warrant. (*Id.* ¶ 111).

On August 29, 2024, Erickson filed the instant Complaint against the Commonwealth codefendants, among others, alleging constitutional injury, defamation, and damages. (ECF No. 1). In response, the Commonwealth codefendants filed the current motion to dismiss asserting numerous privileges and affirmative defenses to Erickson's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 57). The state criminal proceedings against Erickson are still in progress. (ECF No. 101 at 2; 102). The jury for Erickson's criminal trial was sworn in on June 3, 2025, and the presentation of evidence was due to start on September 3, 202; however, these proceedings have been stayed until further order from the Puerto Rico Court of Appeals. (*Id.*). Upon review of the parties' filings and applicable law, the Court agrees with the Commonwealth codefendants that Erickson's claim for injunctive relief should be dismissed under the *Younger* abstention doctrine, that defendant Fernández-Vera is entitled to absolute prosecutorial immunity, and that Counts Five and Seven should be dismissed, but otherwise disagrees with the instant motion to dismiss.

**STANDARD OF REVIEW**

The Commonwealth codefendants moved to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 57 at 3-4). As relevant here, "[m]otions brought under Rule 12(b)(1) and Rule 12(b)(6) are subject to the same standard of review." *Hart v. Mazur*, 903 F. Supp. 277, 279 (D.R.I. 1995) (citing *Negron-Gaztambide v. Hernandez-Torres*, 35 F.3d 25, 27 (1st Cir. 1994)). *See Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998) (applying the same standard when evaluating motions to dismiss under Rules 12(b)(1) and 12(b)(6)).

Rule 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. The "party invoking the jurisdiction of a federal court carries the burden of proving its existence." *P.R. Tel. Co. v. Telecomm's Reg. Bd. of P.R.*, 189 F.3d 1, 7 (1st Cir. 1999). While both legal and factual challenges may be raised, when deciding whether subject-matter jurisdiction exists in a factual challenge, courts follow two general rubrics: (1) when the defendant challenges the legal sufficiency of the facts alleged, courts credit the plaintiff's factual allegations and draw reasonable inferences in his or her favor; and (2) when the defendant challenges the accuracy of facts alleged by the plaintiff and offers contrary evidence, the court weighs the evidence. *Valentín v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). "While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

To survive a Rule 12(b)(6) motion to dismiss at the pleading stage, "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). In evaluating a motion to dismiss, the court first sorts out and discards any "'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alteration marks omitted). The remaining "[n]on-conclusory factual allegations" are fully credited, "even if seemingly incredible." *Id.* Taken together, they must "state a plausible, not a merely conceivable, case for relief." *Id.* At the same time, courts must not "forecast a plaintiff's likelihood of success on the merits." *Id.*

Additionally, a motion to dismiss under Rule 12(b)(6) premised on an affirmative defense may be appropriate if "the facts that establish the defense ... [are] definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice." *In re Colonial Mortgage Bankers Corp.,* 324 F.3d 12, 16 (1st Cir. 2003). Moreover, "the facts so gleaned must conclusively establish the affirmative defense." *Id.*

6

**ANALYSIS**

The Commonwealth codefendants seek to dismiss Erickson's complaint, arguing that (1) the *Younger* abstention doctrine applies and therefore the Court should refrain from interfering with the ongoing state criminal proceeding against Erickson; (2) the Eleventh Amendment bars Erickson's claims against the official capacity defendants, namely Parra-Mercado and González; (3) the privilege of absolute prosecutorial immunity bars Erickson's monetary damages claims against Fernández-Vera and Emanuelli-Hernández; (4) Erickson lacks standing to bring her claims and request relief; (5) Erickson cannot pursue a takings claim against the Commonwealth officers in their official capacities for monetary relief and the personal capacity defendants cannot be held liable;[3] (6) Erickson's claim for malicious prosecution is not yet ripe; and (7) Erickson fails to state a plausible claim for relief for civil conspiracy. (ECF No. 57 at 2).

In her omnibus response to the four separate motions to dismiss by the codefendants, Erickson concedes that her malicious prosecution claim is not yet ripe and that she currently does not have sufficient information to support allegations of specific conduct to support a conspiracy claim. (ECF 66 at 1-2). Given Erickson's admitted current inability to pass the basic pleading threshold for those two claims, they should be dismissed.[4] *Ocasio-Hernández*, 640 F.3d at 12 ("[I]n order to show an

---

[3] The Commonwealth codefendants mistakenly construe Count IV, listed in the Complaint as the "Taking of plaintiff's property without due process of law," (ECF No. 1 at 49) as a claim arising under the Fifth Amendment's Takings Clause. (ECF No. 57 at 21-22). However, Erickson clarifies in her sur-reply that she was not asserting a traditional "takings" claim under the Fifth Amendment and simply was alleging that due process was disregarded in the search and seizure effectuated by state actors on September 1, 2023, at Erickson's home and rescue. (ECF No. 87 at 2-3). Therefore, the Court will not address this argument further.

[4] In her opposition to defendants' motion to dismiss, Erickson indicated she would voluntarily move to dismiss Counts Five and Seven without prejudice, but she has yet to do so. (ECF No. 66 at 2). The Commonwealth codefendants do not contest Erickson's voluntary dismissal of either count (ECF No. 80 at 3). The Court agrees with Erickson that the dismissal of Count Five should be without prejudice. *See, e.g., Rivera-Rosario v. LSREF2 Island Holdings, Ltd. Inc.*, No. CV 20-1639 (FAB), 2021 U.S. Dist. LEXIS 115391, at *9, 2021 WL 2547062, at *4 (D.P.R. June 21, 2021) ("Generally, an action that is not ripe for adjudication is dismissed without prejudice to a party's right to reinstitute the action once it is ripe for disposition."), *aff'd*, 79 F.4th 1 (1st Cir. 2023); *Mirpuri v. ACT Mfg.*, 212 F.3d 624, 628 (1st Cir. 2000) ("In this circuit, the phrase 'without prejudice,' when attached to a dismissal order, is not to be read as in invitation to amend, but rather as a signification that the judgment does not preclude a subsequent lawsuit on the same cause of action either in the rendering court or in some other

entitlement to relief a complaint must contain enough factual material to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted). The Court now turns to the remaining arguments raised in the present motion to dismiss.

### I. *Younger* Abstention Doctrine

The *Younger* abstention doctrine applies here. Adjudicating Erickson's claim for injunctive relief would directly interfere with the state court criminal proceedings that are currently in progress. Because none of the exceptions to *Younger* apply, Erickson's claim for injunctive relief should be dismissed without prejudice. However, her action for damages should be stayed given that the state proceeding cannot redress Erickson's claims for monetary relief.

"[T]he *Younger* Court articulated the federal judiciary's obligation to refrain from adjudicating the merits of federal claims where to do so would needlessly inject federal courts into ongoing state criminal prosecutions." *Brooks v. New Hampshire Supreme Ct.*, 80 F.3d 633, 637 (1st Cir. 1996); *Younger v. Harris*, 401 U.S. 37, 44 (1971). "When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). This doctrine is usually applied in suits that seek injunctive or declaratory relief, but it also can be triggered by an action for damages when a ruling on the merits by a federal court would have the same practical effect as a declaratory judgment on the state court proceedings. *Joubert-Vazquez v. Alvarez-Rubio*, 820 F. Supp. 2d 281, 284-85 (D.P.R. 2011) (citing *Rossi v. Gemma*, 489 F.3d 26, 34, 37 (1st Cir. 2011). Specifically, abstention by the federal court under *Younger* is appropriate "when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge." *Rossi,* 489 F.3d at 34-35. Here, Erickson seeks both injunctive relief and damages in her suit. (ECF No. 1 at 55).

---

forum."). However, Count Seven's deficiency is not one of ripeness but rather failure to state a claim. That count is adjudicated on the merits and is therefore dismissed with prejudice. Fed. R. Civ. P. 41(b).

**A. Injunctive Relief**

As a threshold issue, Erickson claims that the injunctive relief she requests would not interfere with her criminal prosecution as none of the seized property, including the cats, has been announced as evidence in the case. (ECF No. 66 at 10-11). Per Erickson, her property was seized pursuant to an allegedly deficient warrant, as it was not signed by a judge, (ECF No. 1 ¶ 73), but criminal proceedings resulting from the search are currently ongoing in the state court. Erickson is asking the Court to interfere with the ongoing state criminal proceedings and to return any improperly seized items. As they stand, the facts of this case with respect to the injunctive relief requested by Erickson present the quintessential scenario for the application of the *Younger* factors.

First, as the Commonwealth codefendants and Erickson have advised the Court the state law criminal proceedings are ongoing. (ECF No. 101 at 2; 102). Second, the Commonwealth has a significant interest in prosecuting those who violate state law, as they allege Erickson did when they charged her with 120 counts of animal abuse and animal cruelty. (ECF No. 1 ¶ 107). Puerto Rico has established the importance of the well-being and protection of animals through their Law for the Welfare and Protection of Animals, Act 154-2008, and in the most recent Civil Code. P.R. LAWS ANN. tit. 5, §§ 1660-1684; P.R. LAWS ANN. tit. 31, § 5952 (2020). And such proceedings as are necessary "for the vindication of important state policies or for the functioning of the state judicial system … evidence the state's substantial interest in the litigation." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (internal citations omitted). Moreover, it is clear that Erickson has a mechanism by which to present her illegal search and seizure constitutional challenge. In fact, Erickson is currently seeking a suppression hearing in her active criminal case. (ECF No. 102 at 1-2).

*Younger* identifies exceptions when abstention should not be applied, namely when there is a showing of "bad faith, harassment, or any other unusual circumstances that would call for equitable relief." *Younger*, 401 U.S. at 53-54. However, Erickson does not argue that any of these exceptions apply, and the Court agrees with the Commonwealth codefendants' argument that no such exceptions apply in the present case. (ECF No. 57 at 7-8). Therefore, *Younger* abstention is appropriate on Erickson's claim for injunctive relief. Dismissal on *Younger* grounds is without prejudice, *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 32 n.4 (1st Cir. 2004) (citing *Caldwell v. Camp*, 594 F.2d 705,

708 (8th Cir. 1979), as this is not an adjudication on the merits of her claim, leaving Erickson free to refile this claim if her state criminal proceedings do not adequately address her complaints. As such, the Court recommends **GRANTING** the Commonwealth codefendants' motion to dismiss Erickson's injunctive relief claims under *Younger*.

### B. Request for Damages

Similarly to the claim for injunctive relief, were the Court to grant a ruling in support of an award of money damages based on Erickson's claims arising under § 1983 and Puerto Rico state law, the effect of such a grant would substantially disrupt the criminal proceedings currently still pending, at the time of this writing, before the Puerto Rico state court. The first two requirements of the *Younger* analysis remain the same as was discussed for the injunctive relief above. After all, a damages award "may interfere with a state proceeding because it can have the same practical effect as a declaratory judgment: the federal court has produced a ruling on the merits that the federal plaintiff can then use to alter the state proceeding" *Rossi*, 489 F.3d at 37; *see also Landrigan v. City of Warwick*, 628 F.2d 736, 743 (1st Cir. 1980) (holding that a finding that defendants lacked probable cause for an arrest would be, "in practical terms, much the same as the rendering of a declaratory judgment that the pending charge is baseless"). In this light, abstention is appropriate.

However, crucially, a "state criminal proceeding can provide only equitable relief" so therefore "any action for damages would necessarily be separate." *Deakins v. Monaghan*, 484 U.S. 193, 204 (1988). The currently ongoing state proceeding does not involve a claim for damages, and Erickson will not have the opportunity to make such a claim. As the Supreme Court held in *Deakins*, "even if the *Younger* doctrine requires abstention here, the District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding." *Id.* at 202. Accordingly, Erickson's claims for monetary relief should be **STAYED** pending the completion of the state court proceedings.

### II. Eleventh Amendment Immunity

The Commonwealth codefendants correctly point out that the Eleventh Amendment bars suits against states for money damages unless the state has consented. (ECF No. 57 at 11). However, as Erickson responded, this does not apply to this case as Erickson is not suing the official capacity

defendants for monetary damages. (ECF No. 1 ¶¶ 8-9). The Eleventh Amendment does not bar the remedy Erickson does pursue, prospective injunctive relief against the official capacity defendants. *See Poirier v. Massachusetts Dep't of Correction*, 558 F.3d 92, 97 n.6 (1st Cir. 2009) ("A plaintiff may seek prospective injunctive relief against a state official, but may not obtain such relief against a state or its agency because of the sovereign immunity bar of the Eleventh Amendment."). Nevertheless, the Court has found *Younger* abstention to be appropriate for the claims Erickson makes for injunctive relief and therefore will not address this sovereign immunity defense further.

### III.   Absolute Prosecutorial Immunity

The Court finds that Assistant District Attorney Fernández-Vera is entitled to absolute prosecutorial immunity under § 1983 while functioning in his official capacity but finds that Emmanuelli-Hernández is not entitled to immunity for his supervisory actions.

Generally, prosecutors are "absolutely immune" for actions "which are closely associated with the judicial process such as initiating and pursuing criminal prosecution." *Knowlton v. Shaw*, 704 F.3d 1, 5 (1st Cir. 2013) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *Burns v. Reed*, 500 U.S. 478, 486-87 (1991)). This immunity is not available when the actions of a prosecutor "are primarily administrative or investigative in nature and unrelated to their functions as advocates in preparing for the initiation of a prosecution or for judicial proceedings." *Id.* (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). The approach to determining whether absolute immunity attaches to an official's conduct is "functional," where the court will look to the nature of the function performed rather than the identity of the actor who performed it. *Knowlton*, 704 F.3d at 5 (internal citations omitted). Officials claiming absolute immunity bear the burden of proving their actions warrant protection. *Buckley*, 509 U.S. at 274.

#### A. Assistant District Attorney Fernández-Vera

Assistant District Attorney Fernández-Vera is assigned to the Mayagüez judicial district and is sued in his individual capacity for "concocting the 'warrant' used by the PRPD defendants to conduct an illegal and cruel search and seizure of plaintiff's property on September 1st, 2023," and then "fil[ing] the PR Law 154 criminal charges, as retribution for plaintiff's reiterated assertions of her constitutional

rights."[5] (ECF No. 1 ¶ 10). However, Erickson does not allege any specific conduct by Fernández-Vera that falls outside his prosecutorial functions, which are afforded absolute immunity. The Complaint details Fernández-Vera's involvement in obtaining the warrant, (*Id.* ¶¶ 69, 71), the filing of charges, (*Id.* ¶ 107), the probable cause hearing, (*Id.* ¶ 110), and the preliminary hearing, (*Id.* ¶ 111). All these alleged actions fall within the functional purview of a prosecutor as an advocate for the State. As explained in *Buckley*, appearing before a judge and presenting evidence in support of a motion for a search warrant—a "judicial act"— as well as the subsequent act of appearing at a probable cause hearing, do involve the prosecutor's role as advocate for the State and are therefore entitled to absolute immunity. 509 U.S. at 271 (cleaned up). The issuance of a search warrant is a judicial act and therefore "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. Therefore, the Court finds Assistant District Attorney Fernández-Vera is entitled to absolute prosecutorial immunity for the actions described in the Complaint and recommends **GRANTING** dismissal as to him.

### B. Former Attorney General Emmanuelli-Hernández

As the Commonwealth codefendants note in their motion to dismiss, former Attorney General Emmanuelli-Hernández is sued in his individual capacity "for his failure to supervise, correct, or his deliberate indifference to, the unconstitutional practice of retaliatory prosecutions in the judicial district of Mayagüez, … for his failure to supervise, correct, or his deliberate indifference to, the PR-DoJ's prosecutors' practice to pursue criminal charges based on the uncorroborated investigation of a private actor, … and for his failure to train the PR-DoJ's prosecutors and staff in the legal practical application of Puerto Rico's law for the welfare and protection of animals." (ECF No. 1 ¶ 8; ECF No. 57 at 18-19). Erickson does not allege that Emmanuelli-Hernández engaged in any traditional prosecutorial duties in her case so that he could be considered as an advocate for the State. (ECF No.

---

[5] Erickson also alleges that Fernández-Vera "participated as the government's representative in the judicial process filed by the plaintiff to challenge the seizure of her property." (ECF No. 1 ¶ 106). But, the Commonwealth codefendants note that the attorney involved in those proceedings was Jean Rivera-González, whom Erickson did not sue, and not Fernández-Vera. (ECF No. 57 at 18). Erickson has not disputed this, so these allegations will be set aside.

66 at 29 n.13). This makes the case cited by the Commonwealth codefendants inapposite. That case specifically refers to a state attorney general being entitled to absolute prosecutorial immunity regarding "charging decisions or other similar roles in the state proceedings against Plaintiff" but does not mention such immunity being extended to supervisory or training actions. (ECF No. 57 at 19) (citing Magistrate Judge's R. & R. at 6, Jan. 10, 2025, *adopted by Counts v. Maine*, No. 1:24-cv-00361 (JAW), 2025 WL 64955, at *3, 2025 U.S. Dist. LEXIS 4843, at *2 (D. Me. Jan. 10, 2025). Courts have denied absolute immunity to attorney generals exercising general supervisory duties. *See, e.g., Torres v. Goddard*, 793 F.3d 1046, 1058 (9th Cir. 2015) (declining to "grant a supervising prosecutor absolute immunity for supervising an activity that's not protected by absolute immunity under *Imbler*"). Moreover, the Commonwealth codefendants did not develop an argument as to why absolute prosecutorial immunity would attach to Emmanuelli-Hernández for the acts charged in the complaint; therefore, any such argument is deemed waived. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). Therefore, the Court recommends **DENYING** dismissal as to Emmanuelli-Hernández.

### IV.    Article III Standing

Erickson has standing to bring the claims she alleges in her Complaint. Standing to bring a claim under Article III requires the plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that it is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). Under Puerto Rico law, non-profit corporations do not differ from the more traditional, profit-based model in their capacity to sue and be sued. P.R. Laws Ann. tit. 14, § 3522 (2020). Generally, "a corporation and its shareholders are distinct juridical personas and are treated as such in contemplation of law." *Pagan v. Calderon*, 448 F.3d 16, 28 (1st Cir. 2006). As a result, "[i]n terms of standing, this separateness has led to the tenet that '[a]ctions to enforce corporate rights or redress injuries to [a] corporation cannot be maintained by a stockholder in his own name … even though the injury to the corporation may incidentally result in the depreciation or destruction of the

value of the stock.'" *Id.* (quoting *In re Dein Host, Inc.*, 835 F.2d 402, 406 (1st Cir. 1987)). This applies "even when there is only one shareholder in a corporation," and "to actions brought to redress injuries to a corporation under Section 1983." *Diva's Inc. v. City of Bangor*, 411 F.3d 30, 42 (1st Cir. 2005). However, there are exceptions to the rule. *Pagan*, 448 F.3d at 28. For instance, a shareholder may sue in his own name if "he sustains an injury that 'is peculiar to him alone, and [that] does not fall alike upon other stockholders.'" *Id.*, 448 F.3d at 28 (quoting *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 30 (1st Cir. 1987)). They may also sue "if it is absolutely inconceivable that the corporation itself would pursue a claim for the misconduct." *Pagan*, 448 F.3d at 28.

As an initial matter, Erickson incorporated Playa PAWS as a Puerto Rico nonprofit corporation and as a 501c3 organization with the IRS in May 2021. (ECF No. 1 ¶ 21). The Commonwealth codefendants presented documents for the Court's consideration including the Certificate of Incorporation, Certificate of Registry, and General Information on Playa PAWS. (ECF No. 57 at 5, Exhibits I, II, III). Erickson does not contest the validity or accuracy of these documents. "Under certain narrow exceptions, some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment. These exceptions include documents the authenticity of which are not disputed by the parties; official public records; documents central to plaintiffs' claim; and documents sufficiently referred to in the complaint." *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (citing *Watterson v. Page*, 987 F. 2d 1, 3 (1st Cir. 1993)) (internal citations omitted). The Court finds the documents proffered to be sufficiently referred to in the complaint and Erickson does not challenge their consideration by the Court. Additionally, multiple times throughout the complaint Erickson references the existence of Playa PAWS, its incorporated status, and discusses the activities of the corporation such as flying cats out of Puerto Rico, caring for cats Erickson found or that were brought to her to rescue, and soliciting donations. (*E.g.*, ECF No. 1 ¶¶ 7, 21, 22, 25, 27, 38, 46, 66).

Here, the Commonwealth codefendants argue that Erickson "does not have standing to request compensatory and punitive damages, attorney's fees and injunctive relief in the form of an order mandating the return of her illegally seized property," and that "the party that should be making these claims is [Playa PAWS], not Erickson." (ECF No. 57 at 21). However, this discounts the

emotional distress unique to Erickson in relation to the cats at Playa PAWS. (*See, e.g.* ECF No. 1 ¶¶ 22, 27, 93, 99, 102, 103). Emotional distress is a cognizable injury, *see Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310 (9th Cir. 1989) (holding that emotional distress is a personal injury distinguishable from the injury to the corporation), and the fact that the injury arose from the same conduct as the corporate injuries to Playa PAWS does not preclude a finding of direct and independent injury to Erickson. *Gomez v. Alexian Bros. Hosp. of San Jose*, 698 F.2d 1019, 1021 (9th Cir. 1983). The Court therefore finds Erickson has standing due to her particularized allegations of personal injury. *See Pagan*, 448 F.3d at 28.

Additionally, not all the property in controversy is owned by Playa PAWS and therefore Erickson's injury as to those items is hers to claim. (*See* ECF No. 1 ¶ 87, 93) (describing seized personal property such as cash, jewelry, and other assorted items).

Lastly, the Commonwealth codefendants present generalized arguments, despite pointing out that the standing inquiry is claim-specific. (ECF No. 57 at 19). That is, not only do they not distinguish between property belonging to Erickson and Playa PAWS, they do not address claims that cannot be reasonably construed as to being limited to Playa PAWS, such as Erickson's detention and the search of her home. While the injuries alleged in Count II, illegal detention and violation of property rights; Count III, destruction of property during illegal search; and Count IV, taking of plaintiff's property without due process of the law, may have affected Playa PAWS, they also involve Erickson's person and property and cannot be dismissed for lack of standing. Accordingly, the Court recommends that dismissal on standing be **DENIED**.

## CONCLUSION

To sum up, Erickson has standing to bring the claims she alleges in the Complaint. The claims for injunctive relief against the official capacity defendants, Gómez-Torres and González, should be dismissed without prejudice under the *Younger* abstention doctrine. The claims against Fernández-Vera are dismissed because of the privilege of absolute prosecutorial immunity. The claims for monetary damages against the rest of the Commonwealth codefendants in their individual capacities are stayed under *Younger*, as the state criminal proceeding cannot redress Erickson's claims. Count Five should

be dismissed without prejudice and Count Seven should be dismissed with prejudice.

As a result, I recommend the Commonwealth codefendants' motion to dismiss be **GRANTED** in part and **DENIED** in part.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within **ten** days of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED**.

In San Juan, Puerto Rico this September 5, 2025.

*s/ Mariana E. Bauzá-Almonte*
MARIANA E. BAUZÁ-ALMONTE
United States Magistrate Judge