IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**ERICA MARIE ERICKSON,**

    Plaintiff,

    v.

**DOMINGO EMMANUELLI, et al.,**

    Defendants.

Civil No. 24-1389 (CVR) (MBA)

**REPORT AND RECOMMENDATION**

    Erica Marie Erickson ("Erickson") brought this civil action against codefendants Janet Parra Mercado and Joseph González, in their official capacities; Doug Emmanuelli-Hernández, Antonio López Figueroa, Andrés Fernández Vera, José Figueroa Andújar, José Rafael Ramos Quiñones, and David Cabán Méndez, in their personal capacities; veterinarians Marilyn Arce and Adriana Luna; Solymar Crespo; Maria González; and Liberman Media Group, LLC ("LMG")[1] under 42 U.S.C. §§ 1983 and 1988 alleging deprivation of her constitutional rights to privacy, liberty, and property. (ECF No. 1). She also alleged defamation and general tort claims pursuant to Section 8 of Article II of the Constitution of the Commonwealth of Puerto Rico, P.R. CONST. art. II, § 8, the Libel and Slander Act of 1902, P.R. LAWS ANN. tit. 32, §§ 3141-49, and Puerto Rico's General Tort Statute, P.R. LAWS ANN. tit. 31, § 10805. (*Id.*).

---

[1] The Complaint lists "TeleOnce" as the defendant, however LMG submits that since "TeleOnce" is a television station licensed in Puerto Rico and owned by LMG, they are the proper party. (*See* ECF No. 8). The Court agrees and will refer to defendant as LMG but continues to use "TeleOnce" in reference to actions of the television station itself, following the example set by LMG's motion to dismiss. (ECF No. 51, n.1).

1

LMG moved to dismiss the action for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 51). Erickson opposed, (ECF No. 66), and LMG replied, (ECF No. 79). U.S. District Judge Camille Vélez-Rivé referred the motion to dismiss to me for a report and recommendation. (ECF No. 86). For the reasons set forth below, I recommend the motion to dismiss be **GRANTED** in part and **DENIED** in part.

## BACKGROUND[2]

In 2021, Erickson began operating a non-profit animal rescue, Playa PAWS, out of her home in Añasco. (ECF No. 1 ¶¶ 7, 21). Her rescue began attracting negative attention from both her neighbors and the Mayagüez Health Department, culminating in a local court proceeding on November 10, 2022, where a judge dismissed the case. (ECF No. 1 ¶¶ 23-27, 29-30). One neighbor, María González, seemed to be particularly upset by Erickson's rescue, and organized a protest at Erickson's property that reporter Melissa Correa from TeleOnce attended, alongside a news crew. (*Id.* ¶ 34). TeleOnce did not contact Erickson before arriving at her property for the protest. (*Id.* ¶ 35).

On August 17, 2023, Erickson became aware of TeleOnce's upcoming story. (ECF No. 1 ¶ 35). It was at this time that the news organization's ads promoting the upcoming program – which called Erickson an animal abuser – came to her attention. (*Id.*). The previews for the story, advertised as an "investigative report," were broadcasted and reposted on Facebook, Instagram, TeleOnce's website, and other media outlets. (*Id.*). In response, many of Erickson's supporters who had experienced Erickson's positive work and well-cared for rescue responded to the previews posted by TeleOnce, but these comments were ignored. (*Id.*). Neither Erickson nor anyone associated with Playa PAWS was contacted by TeleOnce until the day before the broadcast, when reporter Melissa Correa left a voicemail asking for a reaction to the finalized story. (*Id.* ¶ 37).

On August 22, 2023, TeleOnce premiered the heavily promoted segment titled, "*Garras del Maltrato*," a ten-minute-long story from their Investigative Unit that disparaged Erickson and her animal rescue. (ECF No. 1 ¶ 36). In the broadcast, TeleOnce showed González and her friends claiming Erickson's house was filthy, that she did not take proper care of the cats, and that her house

---

[2] For purposes of LMG's Motion to Dismiss, the facts are taken from Plaintiff's Complaint, ECF No. 1, and are presumed to be true.

and rescue were a public health threat to the neighborhood. (*Id.* ¶ 38). TeleOnce repeated that the conditions the cats were living in were "deplorable." (*Id.*). TeleOnce also made false claims about Erickson's past rescue operation in North Carolina and speculated that she was fleeing North Carolina to avoid charges. (*Id.* ¶ 39). The broadcast also included interviews from neighbors and other seemingly random community members alleging further animal abuse by Erickson without any firsthand knowledge. (*Id.* ¶ 40). Facebook screenshots were added as "proof" of this alleged wrongdoing. (*Id.* ¶ 41). TeleOnce also dug into Erickson's past and included information regarding a disbarment order from 2019, where Erickson was disbarred as an attorney in North Carolina. (*Id.* ¶ 42).

TeleOnce also reported on the complaint from Erickson's neighbor, María González, to the Mayagüez Health Department and included an interview with González who claimed Erickson was illegally operating a business without the required licenses or permits. (ECF No. 1 ¶ 43). TeleOnce mentioned certain aspects of the complaint and later court case, but failed to include important details such as the fact that the case was dismissed and the Health Department had closed the investigation.[3] (*Id.*). Interviews with other neighbors of Erickson's and interested parties were also part of the broadcast, including claims that she kept more than 100 cats inside her home and that she didn't care about the cats or how she was affecting the neighborhood. (*Id.* ¶ 44). One interviewee claimed Erickson "lit cats on fire and intentionally injured them to get money." (*Id.* ¶ 59).

TeleOnce also claimed that Erickson sold cats and showed a fabricated price list. (ECF No. 1 ¶ 46). Further negative interviews followed, and a TeleOnce reporter filmed a segment outside Erickson's property, claiming there were dead cats around the property along with significant trash. (*Id.* ¶¶ 50-54). TeleOnce's reporter also said she was told by neighbors that "Erica threw dead kittens over the fence onto the surrounding land." (*Id.* ¶ 53).

"*Garras del Maltrato*" was aired on television, and posted on Facebook, Instagram, and the TeleOnce website. (ECF No. 1 ¶ 55). The day after the initial broadcast, TeleOnce devoted another

---

[3] Erickson, however, also stated that TeleOnce "put[] an email from the Department of Health on the screen for a brief moment, which showed that they had investigated González's complaints against Erica and had closed the case in January 2023." (ECF No. 1 ¶ 43).

3

news segment to Erickson, calling her a "supposed" animal rescuer and repeating their claim about the deplorable living conditions of the cats. (*Id.* ¶ 56). They also showed footage of her house alongside images from an unrelated story of cats in Rio Piedras being poisoned and killed, seeming to conflate the two. (*Id.*).

To capture footage of the animal rescue, TeleOnce returned to Erickson's property and placed cameras over her privacy fence and filmed inside, while once again claiming in their stories that Erickson had blocked the Health Department from visiting her property. (ECF No. 1 ¶ 58). One neighbor, whose identity was anonymized, was interviewed claiming that Erickson would light her cats on fire and intentionally injured them in order to get money. (*Id.* ¶ 59). This reporting led to Erickson being "threatened and attacked repeatedly" by those who believed the aired allegations. (*Id.* ¶ 60). It was only later that TeleOnce admitted that there had never been any complaints about Erickson regarding animal cruelty. (*Id.* ¶ 61).

Following these initial broadcasts, Erickson life became a "living nightmare" both online and in person. (ECF No. 1 ¶ 65). The consequences of the broadcast became apparent as the animal shelter and veterinary clinic she had partnered with in the past refused to work with her, her home was vandalized, and her adopters, volunteers, and supporters were harassed. (*Id.*). Erickson's mental health suffered as a result, and she couldn't eat or sleep. (*Id.* ¶ 66).

One of Erickson's neighbors went to the police on August 23, 2023, and filed a complaint against Erickson, alleging everything that TeleOnce had aired on the news. (ECF No. 1 ¶ 67). There was no police investigation before a judge issued a warrant to search Erickson's home and rescue. (*Id.* ¶¶ 69-71). And in the early hours of the morning on September 1, 2023, armed police officers stormed inside to search the property. (*Id.* ¶ 72). The police confiscated as many cats as they could capture on Erickson's property and put them in cages to take to codefendant Solymar Crespo's horse rescue. (*Id.* ¶¶ 81-83, 88). Erickson generally left the plastic carriers she used to transport cats unwashed and unsanitized until they were needed, soiled with feces, urine, and contaminated with various diseases. (*Id.* ¶ 88). The police and veterinarian codefendants used these dirty carriers to transport the cats to Crespo's property. (*Id.* ¶¶ 88-89).

TeleOnce was at the property "coming up to the fence/gate," for the entirety of the search,

filming as the raid unfolded and interviewing the participants. (ECF No. 1 ¶ 94). TeleOnce claimed "dozens of live and dead cats" were removed from Erickson's property, showing a photo of Erickson's cat, Dulce, who had been run over by the police after they failed to shut Erickson's property's gate. (*Id.*). In reports throughout the day on September 1, TeleOnce also interviewed Dr. Luna, Captain José Figueroa Andújar, and Solymar Crespo, codefendants in this case, all of whom negatively commented on Erickson and her rescue operation, including saying Erickson had medications for the cats that she refused to let the veterinarians administer and that she generally was a "hoarder who kept cats in cages, did not care for them, and just let them suffer." (*Id.* ¶¶ 95-98).

On August 29, 2024, Erickson filed the complaint against TeleOnce/LMG, among others, alleging constitutional injury, defamation, and damages. (ECF No. 1). In response, LMG filed the current motion to dismiss in January 2025, asserting that Erickson failed to establish a plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6) for her civil conspiracy and defamation claims. (ECF No. 51). The Court agrees with LMG that Count Seven should be dismissed and that the Fair and True Reporting privilege applies to the September 1, 2023 report. The Court otherwise disagrees with LMG.

**STANDARD OF REVIEW**

To survive a motion to dismiss at the pleading stage, "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). In evaluating a motion to dismiss, the court first sorts out and discards any "'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alteration marks omitted). The remaining "[n]on-conclusory factual allegations" are fully credited, "even if seemingly incredible." *Id.* Taken together, they must "state a plausible, not a merely conceivable, case for relief." *Id.* At the same time, courts must not "forecast a plaintiff's likelihood of success on the merits." *Id.*

Additionally, a motion to dismiss under Rule 12(b)(6) premised on an affirmative defense may be appropriate if "the facts that establish the defense ... [are] definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice." *In re Colonial Mortgage Bankers Corp.*, 324

5

F.3d 12, 16 (1st Cir. 2003). Moreover, "the facts so gleaned must conclusively establish the affirmative defense." *Id.*

## ANALYSIS

LMG seeks to dismiss Erickson's complaint for failure to state a claim upon which relief can be granted. (ECF No. 51 at 2). Specifically, they argue that Erickson makes conclusory allegations regarding her claims against LMG for defamation and civil conspiracy and that, taking Erickson's non-conclusory allegations as true, Erickson falls short of demonstrating plausibility. (*Id.*). They also assert affirmative defenses against defamation for the "*Garras del Maltrato*" broadcast and the subsequent August 23, 2023 report, and for the report regarding the September 1, 2023 search of Erickson's property. (*Id.* at 22). In her omnibus response to all four of defendants' motions to dismiss, Erickson concedes that she currently does not have sufficient information to support allegations of specific conduct to support a conspiracy claim. (ECF No. 66 at 1-2). Given Erickson's admitted current inability to pass basic the pleading threshold for that claim, it should be **DISMISSED**.[4] *Ocasio-Hernández*, 640 F.3d at 12 ("[I]n order to show an entitlement to relief a complaint must contain enough factual material to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted)). The Court turns to the remaining claim.

### A. Plausibility of Erickson's Defamation Claim

The Court finds that Erickson's complaint plausibly states a claim for relief from defamation. A defamation claim under Puerto Rico law "requires that plaintiff prove: (1) that the information is false, (2) that plaintiff suffered real damages, and (3) in the case of a private figure plaintiff, that the publication was negligent." *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 98 (1st Cir. 1996) (quoting *Mojica Escobar v. Roca*, 926 F. Supp. 30, 33 (D.P.R. 1996)).

---

[4] In her omnibus opposition to the defendants' motions to dismiss, Erickson indicated she would voluntarily move to dismiss Counts Five and Seven without prejudice, but she has yet to do so. (ECF No. 66 at 2). LMG does not contest Erickson's voluntary dismissal of Count Seven, the civil conspiracy claim. (ECF No. 79 at 1, n.2). Count Five is inapplicable to LMG. (ECF No. 1 ¶¶ 19-20). Count Seven's deficiency, however, is not one of ripeness, but rather failure to state a claim. Count Seven is therefore adjudicated on the merits. Fed. R. Civ. P. 41(b).

Here, Erickson alleges that LMG, through their subsidiary TeleOnce, made multiple false and defamatory statements over numerous broadcasts and online posts.[5] (*E.g.,* ECF No. 1 ¶¶ 19-20, 36, 38-39, 43, 46, 56, 58, 94, 98). LMG counters that the reports were truthful, or at a minimum, that Erickson cannot establish they are false. (ECF No. 51 at 20-21; ECF No. 79 at 2). In support of this argument, they claim that the information they used was "made publicly available" prior to the broadcasts, came from interviews with various sources, was information of which the Court can take judicial notice, and resulted in the seizure of over eighty cats and an ongoing criminal case. (*Id.*). However, the "non-conclusory factual allegations in the complaint must be treated as true, even if seemingly incredible." *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Iqbal*, 129 S. Ct. at 1951). And even accounting for some conclusory facts and contradictory statements in the Complaint, the Court finds Erickson has alleged numerous plausible facts detailing defamation by LMG. For example, TeleOnce's publishing of claims that Erickson lit cats on fire, was breeding and selling cats, and was not properly caring for them, all of which Erickson disputes, support her allegations of defamation. (ECF No. 1 ¶¶ 38, 46, 59, 61-62).

Additionally, in essence LMG is asking the Court to weigh the facts, which the Court cannot do at this stage of the proceedings. It is not relevant to this analysis whether the information was "made publicly available" or that the reports were largely comprised of interviews. (ECF No. 51 at 20). LMG is not shielded from liability simply because the information was provided by interviewees when they publish the information. *See Bosch v. Editorial El Imparcial*, 87 P.R. Dec. 285, 314 (1963) ("One who publishes a libel committed by another is in turn responsible for such libel."). Additionally, the fact that cats were seized from Erickson's property after a warrant was issued based on probable cause and that Erickson is facing trial for allegations of animal abuse still does not preclude Erickson's version of events. For example, Erickson could prove that she was providing proper care to the cats she received in poor condition before making them available for adoption. (*See, e.g.,* ECF No. 1 ¶ 46

---

[5] LMG does not assert a timeliness defense for any of the statements Erickson claims are defamatory, despite a few of them ostensibly falling outside the one-year statute of limitations under Puerto Rico law. P.R. LAWS ANN. tit. 31, § 9496. Therefore, this argument is deemed waived. Regardless, Erickson claims that the videos were posted online (ECF No. 1 ¶ 35), and there is no indication they have been removed.

(stating the nonprofit animal rescue and does not sell cats but charges an adoption fee), ¶ 73 (discussing Erickson turning over vet records), ¶ 78 (indicating the nonprofit had "protocols put in place by their veterinarians to treat the various health conditions and illnesses the cats arrived with when saved from the streets"), ¶ 81 (describing example of mother cat with three-week-old kittens being treated with medications for various diseases)).

That being said, to prevail on this claim, Erickson will ultimately have to show that the statements at issue are false. *Mojica Escobar v. Roca*, 926 F. Supp. 30, 34 (D.P.R. 1996) (citing *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 776 (1986)). But at this stage in the proceedings the Court takes Erickson's non-conclusory facts as true, and her claim plausibly satisfies the first prong of the defamation analysis.

Erickson also claims damages, including destruction of her property, subsequent health issues, monetary losses in her attempts to protect the cats that remained in her care after the police raid, legal costs, loss of liberty, and damage to her reputation. (*E.g.,* ECF No. 1 ¶¶ 42, 99, 102, 103). She thus satisfies the second prong as well. In fact, LMG does not appear to dispute this.

Lastly, LMG does not argue that Erickson cannot prove negligence. Throughout her Complaint, Erickson alleges that LMG was negligent in their gathering and publication of the described defamatory information. (*E.g.,* ECF No. 1 ¶¶ 37, 39, 41, 43, 46, 50, 52, 54, 61). Moreover, the "elements of a *prima facie* case do not need to be established in a complaint." *Farb v. Perez-Riera,* 957 F. Supp. 2d 129, 141 (D.P.R. 2013) (holding that the *prima facie* elements of a defamation case do not need to be established in a complaint in order to pass Rule 12(b)(6) muster) (citing *Rodriguez-Reyes v. Molina Rodriguez,* 711 F.3d 49, 54 (1st Cir. 2013) ("The prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint.")). *See Miller v. Tyler Louthan,* No. CV 22-01538 (MAJ), 2024 WL 1230255, 2024 U.S. Dist. LEXIS 55323 (D.P.R. Mar. 22, 2024) (finding a claim of defamation to be sufficiently pled for the purposes of a 12(b)(6) motion even without a mention of negligence on the part of defendant). Therefore, the Court finds that the Complaint states a plausible claim for relief from defamation at this stage of the proceedings.

### B. Protection of True and Erroneous Reports

LMG has failed to prove that "*Garras del Maltrato*" and the subsequent August 23, 2023 report are shielded by the freedom of the press privilege that covers both true and erroneous reports. In one sentence in its motion to dismiss, LMG claims, "to the extent that Plaintiff claims that TeleOnce portrayed erroneous information … freedom of the press covers both true and erroneous reports." (ECF No. 51 at 22). The Puerto Rico Supreme Court has integrated the U.S. Supreme Court holding of *N.Y. Times Co. v. Sullivan*, guaranteeing a limited privilege for the publication of false information or unjustified commentaries when related to the official conduct of a public official. *Torres Silva v. El Mundo*, 6 P.R. Offic. Trans. 581 (1977); *N.Y. Times Co. v. Sullivan,* 376 U.S. 254 (1964). The public figure status of the plaintiff is key. *Torres Silva*, 6 P.R. Offic. Trans. at 590.

LMG does not argue that Erickson is a public figure but instead attempts to extend the privilege protecting true and erroneous reports to private individuals, citing the Puerto Rico Supreme Court's reasoning that an incorrect determination by the trial court of a plaintiff's status as a public figure was not enough to reverse the appealed judgment. (ECF No. 79 at 2) (citing *Torres Silva*, 6 P.R. Offic. Trans. at 593). This argument by LMG is flawed, however, in that it assumes without support that *Torres Silva*, and therefore the Puerto Rico Supreme Court, has extended the privilege to private figures. *Id.* On the contrary, the *Torres Silva* court reaffirmed the dichotomy between public and private figures and simply held that an incorrect determination of a plaintiff's status was not enough to reverse a judgment without also concluding defendants were negligent in their publication of the information at issue. *Torres Silva*, 6 P.R. Offic. Trans. at 593. In any case, *Bosch* holds that "[u]nless the privilege is apparent on the face of the complaint … the rule is that the defense of privilege cannot be pleaded by way of motion to dismiss or by demurrer." 87 P.R. Dec. 285. In the absence of a clear showing that the privilege applies, the Court cannot recommend dismissal. *See In re Colonial Mortgage Bankers Corp.,* 324 F.3d at 16 ("[T]he facts so gleaned must conclusively establish the affirmative defense.").

### C. Fair and True Report Privilege

The Court agrees with LMG's argument that TeleOnce's reports regarding the September 1, 2023 search is protected by the fair and true report privilege, as the facts presented by Erickson demonstrate that the reports were a substantially accurate account of the search and were not overly

9

biased. Puerto Rico's Libel and Slander law states "a publication or communication shall not be presumed to be malicious when made … [i]n a fair and true report of a judicial, legislative, official or other proceeding, or of anything said in the course thereof." P.R. LAWS ANN. tit. 32, § 3144. The Puerto Rico Supreme Court has indicated that it applies to communications "made in any legislative or judicial proceeding *or in any other proceeding authorized by law*." *Caraballo v. P.R. Ilustrado*, 70 D.P.R. 283 (1949) (emphasis added). To invoke the "fair and true report privilege," the report must (1) capture "the substance of the proceeding measured by the nature and probable effect on the mind of the average [viewer]" and (2) "reflect the truth of what happened or what was said in the course of" a legal, legislative, or official proceeding. *Villanueva v. Hernandez Class*, 128 P.R. Dec. 618, 647 (1991). The report need not be perfectly accurate but must be "a substantially accurate summary of the occurrence reported." *Id.* (internal citations omitted).

The first prong requires that the average media consumer be considered, and the events must be reported on in a "moderate, professional tone, avoiding crude or sensationalistic styles." *Villanueva,* 128 P.R. Dec. at 649-50. While the initial reports on Erickson and her animal rescue at the end of August 2023, as described in the Complaint could be characterized as dramatic and perhaps sensational, the Complaint gives no indication that the September 1 reports were on the same level. (*See* ECF No. 1 ¶¶ 94-98).

Additionally, with regards to the second prong of this privilege, the Complaint details that most of the September 1 reports from TeleOnce were made up of interviews of three participants in the search, namely codefendants Dr. Luna Arce, Captain José Figueroa Andújar, and Solymar Crespo. (ECF No. 1 ¶¶ 94-98). Like in *Villanueva*, where the Puerto Rico Supreme Court found the news report to be privileged due to it "merely relating the events" of an official proceeding as they were reported to the newspaper by the police and avoiding sensationalism, 128 P.R. Dec. at 652, the Court finds here that based on the facts included in the Complaint TeleOnce did not sensationalize the September 1 search and related the execution of the search warrant as it was witnessed and described by those actively involved.

Erickson contests the truth of some of the statements of the interviewees, (ECF No. 1 ¶¶ 94-98), but TeleOnce did not have a reason to doubt their accuracy at the time of the broadcasts and

10

generally captured the substance of the search as it proceeded. Specifically, Erickson claims that TeleOnce lied when they reported that there were "dozens of live and dead cats" in Ericksons property when "[t]here was not a single dead cat." (ECF No. 1 ¶ 94). But in that same paragraph, Erickson acknowledges that her pet cat Dulce was ultimately found dead within her property even if by the police's doing. (*Id.*). And it is uncontested that over eighty cats were removed. (*Id.* ¶¶ 90, 101). Next, Erickson points to Dr. Luna's statement requirement the amount of litter boxes required, but it is hard to see how that affects the calculus here. (*Id.* ¶ 96). On that same vein, Dr. Luna's statements about the care (or lack thereof) for the cats published by TeleOnce are consistent with the seizure of the cats by the police. (*See id.*). Lastly, Erickson points to a statement that the cats were removed from Erickson's home as false (*Id.* ¶ 97), but this is not a significant distinction as the rescue was located below Erickson's home and within her property (*Id.* ¶¶ 7, 75). *See Caraballo*, 70 D.P.R. at 292 (privilege not defeated despite the report indicating Caraballo had been arrested, which was untrue, because it was a logical inference for the newspaper to draw from a complaint being filed against Caraballo by the police).

Moreover, Erickson's main contention, that the privilege does not apply because it was not a judicial proceeding, presents a narrow reading of the law, which is inconsistent with its application by the Puerto Rico Supreme Court and in this District. *See Caraballo v. P.R. Ilustrado*, 70 D.P.R. 283; 1949 PR Sup. LEXIS 364 (1949) (applying privilege to a report of information contained in a police blotter regarding the filing of a criminal complaint); *Villanueva*, 128 P.R. Dec. at 650 (applying privilege to report of information provided by the police and included "other facts," "which allegedly stemmed from the reporter's investigation"); *Fazio v. James River Ins. Co.*, No. 22-1186 (MEL), 2022 WL 6181469 at *4, 2022 U.S. Dist. LEXIS 184243 at *12 (D.P.R. Sep. 30, 2022) (applying privilege to letters sent by defendant to the Puerto Rico Insurance Commissioner). Given the applicability of the privilege to true and fair reports of police activity, and that the execution of the search warrant is a proceeding authorized by law, the Court finds that the privilege applies here. Thus, the Court recommends that Erickson's defamation claim against LMG with regard to the September 1, 2023 broadcasts be **DISMISSED**.

## CONCLUSION

For the foregoing reasons, I recommend LMG's motion to dismiss be **GRANTED** in part and **DENIED** in part.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within **ten** days of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED**.

In San Juan, Puerto Rico this September 9, 2025.

*s/ Mariana E. Bauzá-Almonte*
MARIANA E. BAUZÁ-ALMONTE
United States Magistrate Judge